Eric M. Poulin
CA State Bar No. 298476
Roy T. Willey, IV (*Pro Hac Vice Forthcoming*)
Blake G. Abbott (*Pro Hac Vice Forthcoming*)
ANASTOPOULO LAW FIRM, LLC
32 Ann Street
Charleston, SC 29403
P: (843) 614-8888
F: (843) 494-5536
Email: eric@akimlawfirm.com
        roy@akimlawfirm.com
        blake@akimlawfirm.com

ATTORNEYS FOR PLAINTIFFS

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAVID MOODY and JULIE MOODY, on behalf of themselves and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>ROBINHOOD FINANCIAL, LLC, ROBINHOOD SECURITES, LLC, ROBINHOOD MARKETS, INC., CITADEL SECURITIES LLC, CITADEL ENTERPRISE AMERICAS LLC F/K/A CITADEL LLC<br><br>        Defendants. | **CLASS ACTION COMPLAINT**<br>**JURY TRIAL DEMANDED** |

Plaintiffs David Moody and Julie Moody (collectively, "Plaintiffs") by and through undersigned counsel, bring this action against Robinhood Financial, LLC ("Robinhood Financial"), Robinhood Securities, LLC ("Robinhood Securites") & Robinhood Markets, Inc. ("Robinhood Markets") (collectively, "Robinhood"), and Citadel Securities LLC ("Citadel Securities") and Citadel Enterprise Americas LLC f/k/a Citadel LLC ("Citadel") (collectively, "Citadel").  Plaintiffs make the following allegations upon personal knowledge as to their own acts, and upon information and belief, and investigation, as to all other matters, alleging as follows:

**<u>PRELIMINARY STATEMENT</u>**

1.    Plaintiffs bring this case as a result of Robinhood's decision to remove the stock GameStop ("GME") from its trading platform, along with American Airlines ("AAL"), AMC Entertainment Holdings ("AMC"), Blackberry Ltd ("BB"), Bed Bath & Beyond, Inc. ("BBBY"), Castor Maritime, Inc. ("CTRM"), Express, Inc. ("EXPR"), Koss Corporation ("KOSS"),  Naked Brand Group ("NAKD"), Nokia ("NOK"), Sundial Growers, Inc. ("SNDL"), Tootsie Roll Industries ("TR"), Trivago N.V. ("TRVG"), thereby manipulating the open-market.

2.    In so doing, Robinhood and Citadel (collectively, "Defendants") created a one-way buy-sell situation by which the only option of retail investors who had already purchased the above securities and others to sell/liquidate their holdings, thus depriving these stocks of buy liquidity to counter selling pressure by permitting purchase of the equity to take place.  Plaintiffs and other members of the Class that held them suffered massive losses.

3.    Numerous retail investors were forcefully stopped out of their positions by Defendants at incredibly low prices as a result of these attacks, suffering massive financial losses.

4.    In so doing, Defendants created a situation in which the only entities which were permitted to purchase these equities were equity firm insiders and hedge fund operators, many of

whom were leveraged heavily "short" against the equities and had a vested interest in seeing the equity prices depressed so they could cover their short sales at a lower cost.

5.      Robinhood has refused and continues to refuse full participation by retail investors in GME as well as other stocks in the so-called "open market."

6.      Plaintiffs bring this class action on behalf of Robinhood customers who were denied full access to GME, along with other select stocks, and for the many including themselves, who suffered losses as a result of the restrictions on trading.  Plaintiffs assert putative class action claims generally including breach of contract, negligence, breach of fiduciary duty, violations of California's False Advertising Laws and violations of California's Unfair Competition Law.

7.      Plaintiffs seek damages, restitution, disgorgement and declaratory relief.

**PARTIES**

8.      Robinhood Financial is a Delaware LLC with its principal place of business in Menlo Park, California.  It is a wholly-owned subsidiary of Robinhood Markets.  Robinhood Financial is registered as a broker-dealer with the U.S. Securities & Exchange Commission ("SEC").  Defendant Robinhood Financial acts as an introducing broker and has a clearing arrangement with its affiliate Defendant Robinhood Securities.

9.      Robinhood Securities, is a Delaware LLC with its principal place of business in Lake Mary, Florida.  It is a wholly-owned subsidiary of Robinhood Markets.

10.      Robinhood Markets, Inc. is a Delaware corporation with its principal place of business in Menlo Park, California.  Robinhood Markets is the corporate parent of Robinhood Financial and Robinhood Securities.

11.      Citadel Securities LLC ("Citadel Securities") is a Delaware corporation with its principal place of business at 131 South Dearborn Street, Chicago, IL 60603.  Citadel Securities

provides market-making services to Robinhood through its Citadel Execution Services line of business.

12.     Defendant Citadel Enterprise Americas LLC f/k/a Citadel LLC ("Citadel") is a Delaware corporation with its principal place of business at 131 South Dearborn Street, Chicago, IL 60603.  Citadel provides operational and administrative services to Citadel Securities.  Citadel also has its Global Controller sign off on Annual Broker Deal Reports with the SEC for Citadel Securities. Citadel Securities and Citadel operate their trademarks under the common ownership and control of Citadel LLC n/k/a Citadel.

13.     Plaintiff David Moody is an individual and a resident and citizen of the state of South Carolina.

14.     Plaintiff Julie Moody is an individual and a resident and citizen of the state of South Carolina.

## JURISDICTION AND VENUE

15.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

16.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

17.     This Court has personal jurisdiction over Defendants because Defendants conduct business in California and has sufficient minimum contacts with California.

18.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## **BACKGROUND FACTS**

19.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

20.    Robinhood is an online brokerage firm founded in 2013 that states it is "a pioneer in commission-free investing."  Robinhood customers can place securities trades through the firm's website and by using a web-based application (or "app").  Robinhood permits customers to purchase and sell securities, including option contracts, and engage in trading on margin.  The company has no storefront offices and operates entirely online.  Robinhood is a FINRA[1] regulated broker-dealer.[2]

**K. Governing Law.**

This Agreement and all transactions made in My Account shall be governed by the laws of the State of California (regardless of the choice of law rules thereof), except to the extent governed by the federal securities laws, FINRA Rules, and the regulations, customs and usage of the exchanges or market (and its clearing house) on which transactions are executed.

21.    Robinhood offers people the ability to invest in stocks, ETFs and options through an electronic trading platform, both online and through an app.

22.    Robinhood spends a great deal of energy marketing itself as born out of the Occupy Wall Street movement and champions a mission to "democratize finance for all."

23.    When visitors go to the Robinhood website, they are greeted with the following:[3]



---

[1] Financial Industry Regulatory Authority, Inc. (FINRA) is a private corporation that acts as a non-governmental, self-regulatory organization that regulates member brokerage firms and exchange markets.

[2] https://cdn.robinhood.com/assets/robinhood/legal/Customer%20Agreement.pdf, pg. 29(Last accessed Jan. 29, 2021).

[3] https://robinhood.com/us/en/ (Last accessed Jan. 28, 2021)

24.     Upon information and belief, Robinhood gets its name from its mission to "provide everyone with access to the financial markets, not just the wealthy."

25.     Robinhood offers user-friendly digital services, which has made Robinhood very popular, especially with younger traders.

26.     Robinhood's original product was commission-free trades of stocks and exchange-traded funds.  As Robinhood grew, it added more risky and complex products-like options and margin trading.  Those products, combined with Robinhood's game-like interface, have been a hit with millennials, and its typical customer is 31 years old on average.[4]

27.     According to an analysis of new filings from nine brokerage firms by the research firm Alphacution for the New York Times, in the first quarter of 2020, Robinhood users traded nine times as many shares as E-Trade customers and 40 times as many shares as Charles Schwab customers. They also bought and sold 88 times as many options contracts as Schwab customers, relative to the average account size.[5]



**Velocity of Options Trading at Leading Retail Brokers**
Options contracts traded for every dollar in the average customer's account.

| | |
|---|---|
| Robinhood | 25,840 |
| TD Ameritrade | 2,188 |
| E-Trade | 1,844 |
| Charles Schwab | 292 |

_____

Note:   Figure is the number of options contracts traded in the first quarter of 2020, per dollar in the average customer account. Robinhood does not provide data on customer holdings, but Alphacution estimated that the average account holds $4,800, based on customer cash holdings listed in financial filings.

By The New York Times | Source: Alphacution Research Conservatory based on company filings

_____

[4] https://www.businessinsider.com/robinhood- office-installed-bulletproof-glass-after-frustrated-traders-visited-report-2 (Last accessed Jan. 29, 2021).
[5] https://www.nytimes.com/2020/07/08/technology/robinhood-risky-trading.html?searchResultPosition=2 (Last accessed Jan. 29, 2021).

28.     Robinhood makes money primarily through "payment for order flow" fees.

29.     Payment for order flow fees are paid to Robinhood from electronic market makers for passing on customer orders.  For example, if a Robinhood user purchases a share of GME through their account, Robinhood sends that order to a large market maker like Citadel Securities and receives money in return-i.e., the "payment of order flow" fees.  Citadel, meanwhile, completes the trade and makes money for itself as well.

30.     Robinhood routes over 50% of customer orders to the market through Citadel Securities.  Citadel Securities is the primary market-maker for Robinhood, providing liquidity for over half of the trades entered on the Robinhood platform.

31.     According to a recent SEC filing, Citadel Securities and several other firms paid Robinhood approximately $91 million in the first quarter of 2020.  And in the second quarter of 2020 – Robinhood made $180 million off trades, roughly double from the prior quarter.[6]

32.     Citadel is also an investor in Melvin Capital Management LP, an investment advisor that had a significant short position in GME.  Melvin Capital was pressured to close out its entire short position on the afternoon of Tuesday, January 26, 2021.  It is reported that Melvin Capital has lost nearly 30% since the start of 2021.

33.     The loss to Melvin Capital on this GME short squeeze was so large that later on January 25, 2021, it reported obtained a cash infusion of nearly $3 billion from Citadel, in which Citadel took a non-controlling revenue share in Melvin Capital.

34.     Citadel also took short positions in many of the listed restricted securities in this Complaint immediately prior to the restrictions by Robinhood.

35.     Another hedge fund adversely impacted by the short squeeze is D1 Capital Partners, which is a large investor in Robinhood.

---

[6] https://www.businessofapps.com/data/robinhood-statistics/ (Last accessed Feb. 1, 2021).

36.     Betting AMC would decline, D1 Capital Partners was down $4 billion before the restrictions to the securities in this Complaint.  The restrictions Robinhood imposed depressed AMC stock from $19.88 at the close on January 27 to an $8.63 close on January 28, thereby allowing D1 Capital Partners to exit its short positions with minimal losses.

37.     Upon information and belief, Robinhood is valued at approximately $11.2 billion.[7]

38.     On or around January 11, 2021, stocks in GameStop Corp. ("GME") began to rise, funded in part by purchases of Robinhood users.

39.     At that time, Robinhood allowed retail investors to trade GME on the open market.

40.     On or about January 27, 2021, Robinhood, in order to slow the growth of GME and deprive their customers of the ability to use their service, abruptly, purposefully, willfully and knowingly pulled GME from their app.

41.     Upon information and belief, more than half Robinhood users have exposure to GME.

42.     On or about January 27, 2021, Robinhood, in order to slow the growth of other select stocks such as AAL, AMC, BB, BBBY, CTRM, EXPR, KOSS,  NAKD, NOK, SNDL, TR, TRVG, and deprive their customers of the ability to use their service, abruptly, purposefully, willfully and knowingly pulled these stocks from their app.

43.     Upon information and belief, Robinhood is pulling securities like GME from its platform to slow growth and help benefit individuals and institutions who are not Robinhood customers but are Robinhood large institutional investors or potential investors.

44.     Such actions constitute negligence, breaches of contract and fiduciary duties, and are violations of FINRA regulations.  Per FINRA regulations, Robinhood has a duty to process trades timely and at the best prices for its users.

---

[7] Kate Rooney, Robinhood snags third mega-investment of the year, boosting valuation to $11.2 billion, CNBC (August 17, 2020) https://www.cnbc.com/2020/08/17/robinhood-announces-another-mega-round-valuation-soars-to-11point2b.html (Last accessed Jan. 29, 2021).

45.     In fact, Robinhood commits itself to the execution of orders.[8]

# Our execution quality

Every time you place a trade, your trust is in our
hands—and we're committed to seeking a quality
execution on every order.

46.     Pursuant to FINRA rule 5310 (known as "Best Execution and Interpositioning"),
Robinhood "must make every effort to execute a marketable customer order that it receives promptly
and fully." By preventing customers' timely trades, Robinhood breached these obligation and caused
its customers substantial losses.

47.     Robinhood acknowledges that arbitration does not apply to class actions filed against
it.[9]

**38. Arbitration.**

A. This Agreement contains a pre-dispute arbitration clause. By signing an arbitration agreement,
the parties agree as follows: (1) All parties to this Agreement are giving up the right to sue each
other in court, including the right to a trial by jury, except as provided by the rules of the
arbitration forum in which a claim is filed. (2) Arbitration awards are generally final and binding; a
party's ability to have a court reverse or modify an arbitration award is very limited. (3) The ability
of the parties to obtain documents, witness statements and other discovery is generally more
limited in arbitration than in court proceedings. (4) The arbitrators do not have to explain the
reason(s) for their award unless, in an eligible case, a joint request for an explained decision has
been submitted by all parties to the panel at least 20 days prior to the first scheduled hearing
date. (5) The panel of arbitrators will typically include a minority of arbitrators who were or are
affiliated with the securities industry. (6) The rules of some arbitration forums may impose time
limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration
may be brought in court. (7) The rules of the arbitration forum in which the claim is filed, and any
amendments thereto, shall be incorporated into this Agreement. B. Any controversy or claim
arising out of or relating to this Agreement, any other agreement between Me and Robinhood, any
Account(s) established hereunder, any transaction therein, shall be settled by arbitration in
accordance with the rules of FINRA Dispute Resolution, Inc. ("FINRA DR"). I agree to arbitrate
any controversy or claim before FINRA DR in the State of California. C. This agreement to
arbitrate constitutes a waiver of the right to seek a judicial forum unless such a waiver would be
void under the federal securities laws. If I am a foreign national, non-resident alien, or if I do not
reside in the United States, I agree to waive My right to file an action against Robinhood in any
foreign venue. D. No person shall bring a putative or certified class action to arbitration, nor seek
to enforce any pre-dispute arbitration agreement against any person who has initiated in court a
putative class action; or who is a member of a putative class who has not opted out of the class
with respect to any claims encompassed by the putative class action until: (1) the class
certification is denied; or (2) the class is decertified; or (3) the customer is excluded from the
class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a
waiver of any rights under this Agreement except to the extent stated herein.

ACCEPTED AND AGREED: I acknowledge that I have read the preceding terms and conditions of this
Agreement, that I understand them and that I hereby manifest my assent to, and my agreement to
comply with, those terms and conditions by accepting this agreement. **I ALSO UNDERSTAND THAT
BY ACCEPTING THIS AGREEMENT I HAVE ACKNOWLEDGED THAT THIS AGREEMENT
CONTAINS A PREDISPUTE ARBITRATION CLAUSE IN SECTION 38 HEREIN. I ALSO AGREE (1)
THAT ANY OF MY MARGIN ACCOUNT SECURITIES MAY BE BORROWED BY ROBINHOOD OR
LOANED TO OTHERS; (2) I HAVE RECEIVED OF A COPY OF THIS AGREEMENT AND (3) I HAVE
REVIEWED A COPY OF THE MARGIN DISCLOSURE STATEMENT.**

---

[8] https://robinhood.com (Last accessed Feb. 1, 2021)
[9] *Id.* (Last accessed Jan. 29, 2021).

48.     Robinhood admits to liability of losses or damages if they do not complete a transaction to or from a user's Account with limited exceptions:[10]

**9. Our Liability.**

If we do not complete a transaction to or from your Account on time or in the correct amount according to our Agreement with you, we will be liable for your losses or damages. However, there are some exceptions. We will not be liable, for instance:

1. If through no fault of Robinhood or the Bank, you do not have enough Available Funds in your Account to complete the transaction;

2. If a merchant refuses to accept your Card;

3. If an electronic terminal where you are making a transaction does not operate properly, and you knew about the problem when you initiated the transaction;

4. If access to your Card has been blocked after you reported your Card lost or stolen;

5. If there is a hold or your funds are subject to legal or administrative process or other encumbrance restricting their use;

6. If Robinhood or the Bank have reason to believe the requested transaction is unauthorized;

7. If circumstances beyond the control of Robinhood or the Bank (such as fire, flood, or computer or communication failure) prevent the completion of the transaction, despite reasonable precautions that Robinhood or the Bank have taken; or

8. For any other exception stated in this Agreement with you or by applicable law.

49.     The loss of access to GME stock and other stocks on Robinhood's trading platform caused concrete, particularized and actual damages for Robinhood customers and lost potential for those who held GME stock and other restricted securities identified in this Complaint.

**Plaintiff David Moody**

50.     Plaintiff David Moody is a customer of Robinhood and entered into a Customer Agreement in order to use Robinhood's online trading systems.

51.     On January 27, 2021, Plaintiff David Moody ("DC") used his Robinhood app to submit an order for $200 worth of AMC.

---

[10] https://cdn.robinhood.com/assets/robinhood/legal/Customer%20Agreement.pdf, pg. 32 (Last accessed Jan. 29, 2021)

1
2
3
4

## Your Order Has Been Confirmed

5

6 Hi DC,

7

8 You have submitted a market order to buy 9.298085 shares of AMC. You can check on the status of this order on Robinhood. We will notify you when this order has been executed.

9

10

11 If you have any questions, you can **contact us**.

12

13 – The Robinhood Team

14

15    52.    On the morning of January 28, 2021, Plaintiff David Moody was informed from

16 Robinhood that the order had been cancelled.

17

18

## Your Order Has Been Canceled

19

20 Hi DC,

21

22 Your market order to buy $204.00 of AMC was canceled on January 28th, 2021 at 9:21 AM.

23

24 You can check out our **Help Center** for more information, and please feel free to

25 respond to this email if you have any additional questions. We're here to help.

26

27 – The Robinhood Team

28

53.     Once Plaintiff David Moody had learned Robinhood had cancelled his order, Plaintiff searched for AMC on the app, but found it to be unavailable.

54.     As a result of Robinhood's actions, Plaintiff David Moody suffered substantial damages.

**Plaintiff Julie Moody**

55.     Plaintiff Julie Moody is a customer of Robinhood and entered into a Customer Agreement in order to use Robinhood's online trading systems.

56.     On January 27, 2021 Plaintiff Julie Moody used her Robinhood app to submit an order for $800 worth of NAKD and NOK.

57.     On the morning of January 28, 2021, Plaintiff Julie Moody was informed from Robinhood that the order had been cancelled.

58.     As a result of Robinhood's actions, Plaintiff Julie Moody suffered substantial damages.

**The Class**

59.     On the morning of January 28, 2021, Robinhood announced "In light of recent volatility, we are restricting transactions for certain securities to position closing only, including AAL, AMC, BB, BBBY, CTRM, EXPR, GME, KOSS, NAKD, NOK, SNDL, TR and TRVG."[11]

60.     In the same announcement, Robinhood announced, "We fundamentally believe that *everyone should have access* to financial markets."[12] (emphasis added).

61.     In the afternoon of January 28, 2021, Robinhood announced, "we stand in support of our customers and the freedom of retail investors to shape their own financial future."[13]

62.     Upon information and belief, Robinhood even forced short sells of stock of GME and other stocks.

---

[11] https://blog.robinhood.com (Last accessed Jan. 28, 2021)
[12] *Id.* (Last accessed Jan. 28, 2021)
[13] *Id.* (Last accessed Jan. 28, 2021)

63.     Plaintiffs and members of the Proposed Class were deprived of all earning opportunities associated with GME, and other stocks listed above.

## CLASS ACTION ALLEGATIONS

64.     Plaintiffs incorporates by reference all preceding allegations as though fully set forth herein.

65.     Plaintiffs bring this action on behalf of themselves and as a class action, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Classes:

**The Class:**

All Robinhood customers.

66.     Excluded from the Class are any Robinhood entities, and any of their respective members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; and the judicial officers, and their immediate family members, and Court staff assigned to this case.  Also excluded from the Class are any Citadel entities, and any of their respective members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; and the judicial officers, and their immediate family members, and Court staff assigned to this case.  Plaintiff reserves the right to modify or amend the Class definitions, as appropriate, during the course of this litigation.

67.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

68.     This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

**Numerosity: Fed. R. Civ. P. 23(a)(1)**

69.     The members of the Class are so numerous and geographically dispersed that individual joinder of all members is impracticable.  Plaintiffs are informed and believe that there are

thousands of members of the Class, the precise number being unknown to Plaintiffs, but such number being ascertainable from Defendants' records.  Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

**Commonality and Predominance: Fed. R. Civ. P. 23(a)(2)**

70.     This action involves common questions of law and fact, which predominate over any questions affecting individual members of the Class, including, without limitation:

i.      Whether Robinhood engaged in the conduct alleged herein;

ii.     Whether Robinhood knowingly failed to provide the financial services that were needed to handle reasonable consumer demand, including trading securities that are available on every other competitive trading platform;

iii.    Whether Robinhood failed to provide the duty of care to their customers when they purposefully removed GME and other securities;

iv.     Whether Robinhood removed GME and other securities purposefully to harm their customers' positions in GME and other securities and benefit their own potential financial gains;

v.      Whether Robinhood violated FINRA Rule 5310, among other FINRA rules, state rules and federal regulations;

vi.     Whether Robinhood violated consumer protection laws in failing to disclose that its services would not include the ability to trade on GME, and other securities, for substantial periods of time;

vii.    Whether Robinhood was in breach of its legal, regulatory and licensing requirements by failing to provide adequate access to financial services;

viii.   Whether Robinhood was in breach of its contracts and/or the implied covenant of good faith and fair dealing in connection with its failure to provide financial services;

ix.     Whether Robinhood was negligent or grossly negligent by failing to provide financial service in a timely manner due to its own possible nefarious desires;

x.      Whether Robinhood was unjustly enriched by its conduct;

xv.     Whether Robinhood violated California's Unfair Competition Law, Bus. & Prof. Code Section 17200, *et seq.*;

xix.   Whether Robinhood violated California's False Advertising Laws, Bus. & Prof. Code Section 17500, *et seq.*;

xx.   Whether Citadel aided and abetted a Robinhood in a breach of fiduciary duty;

xxi.   Whether Citadel intentionally interfered with the contact between Plaintiffs and the members of the Class and Robinhood;

xxii.   Whether certification of any or all of the classes proposed herein is appropriate under Fed. R. Civ. P. 23;

xxiii.   Whether Class members are entitled to declaratory, equitable, or injunctive relief, and/or other relief; and

xxiv.   The amount and nature of relief to be awarded to Plaintiffs and the other members of the Class.

**Typicality: Fed. R. Civ. P. 23(a)(3)**

71.   Plaintiffs' claims are typical of the claims of other members of the Class because, among other things, all such members were similarly situated and were comparably injured through Defendants' wrongful conduct as set forth herein.

**Adequacy: Fed. R. Civ. P. 23(a)(4)**

72.   Plaintiffs are adequate representatives for the Class because their interests do not conflict with the interests of other members of the Class they seek to represent.  Plaintiffs have retained counsel competent and experienced in complex litigation and Plaintiffs intend to prosecute the action vigorously.  The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

**Superiority: Fed. R. Civ. P. 23(b)(3)**

73.   A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiffs and other members of the Class are relatively small compared to the burden and expense that would be

required to individually litigate their claims against Defendants', so it would be impracticable for members of the Class to individually seek redress for Defendants' wrongful conduct.

74.     Even if members of the Class could afford individual litigation, the Court system likely could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, comprehensive supervision by a single court, and finality of the litigation.

**Certification of Specific Issues: Fed. R. Civ. P. 23(c)(4)**

75.     To the extent that any described Class herein does not meet the requirements of Rules 23(b)(2) or (b)(3), Plaintiffs seek the certification of issues that will drive the litigation toward resolution.

**Declaratory and Injunctive Relief: Fed. R. Civ. P. 23(b)(2)**

76.     Defendants has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described herein, with respect to the members of the Class as a whole.

**FOR A FIRST COLLECTIVE CAUSE OF ACTION**
**BREACH OF CONTRACT**
**(Against Robinhood)**

**(Plaintiffs and the Other Members of the Class)**

77.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

78.     Plaintiffs bring this count on behalf of themselves and other members other the Class.

79.     In order to use the Robinhood trading platform, a potential customer must enter into the Customer Agreement with Robinhood.

80.     Plaintiffs and all members of the Class entered into a Customer Agreement with Robinhood.

81.     The rights and privileges contained therein form the basis of the bargain on which prospective customers agree to accept Robinhood's offer to enter into a contract in exchange for opening one or more accounts.

82.     Accordingly, it is clear that Robinhood offered to provide access to their trading platform with complete access to the open market through their services as an online brokerage firm.

83.     Based on this mutual assent, Plaintiffs and the other members of the Class fulfilled their end of the bargain when they registered for "My Account."

84.     Robinhood furnished consideration to Plaintiffs and Class members in the form of access to Robinhood's online trading platform, enabling them to trade securities and options listed on U.S. securities exchanges.  In exchange, Robinhood received consideration from Plaintiffs and Class members including, but not limited to, order flow data, which it sold to market makers to generate revenue, interested generates on cash balances in accounts, commissions and fees based on trades placed, interest on margins and other fees.

85.     However, after accepting such consideration from Plaintiffs and other members of the Class, Robinhood breached its Customer Agreement by, among other things, failing to disclosure that its platform was going to randomly pull stocks from its platform; that Robinhood knowingly put their customers at a disadvantage compared to customers who used other means; that Robinhood failed to provide access to its own financial incentives to pull certain securities including GME; that Robinhood's prohibited Plaintiffs and members of the Class from performing under the contract; that Robinhood failed to comply with all applicable legal, regularly and licensing requirement; and that Robinhood failed to exercise trades and actions requested by customers.

86.     Moreover, by its own terms, Robinhood admits liability for its actions on January 28, 2021.[14]

87.     As a direct and proximate result of Robinhood's breach, Plaintiffs and other members of the Class suffered damages and losses to and are continually exposed to harm because Robinhood continues to fail to perform under the Customer Agreement.  These losses reflect damages to Plaintiffs and Class members in an amount to be determined at trial or separate proceedings as necessary.

**FOR A SECOND COLLECTIVE CAUSE OF ACTION**
**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
**(Against Robinhood)**

**(Plaintiffs and Other Members of the Class)**

88.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

89.     Plaintiffs bring this count on behalf of themselves and other members of the Class.

90.     As set forth above, Plaintiffs, Class members and Robinhood are parties to the Customer Agreement and related contracts.

91.     Robinhood was obligated to provide the trading services required under those contracts at all times, including but not limited to, trades for GME.

92.     Robinhood unfairly interfered with Plaintiffs' and Class members' rights to receive the benefits of the Customer Agreement and related contracts by, failing to perform under the contract by, among other things, (i) failing to provide services necessary to carry out a trade; (ii) failing to provide certain trading services whatsoever; (iii) failing to inform individuals in a timely manner of the drastic changes to trading abilities; and (iv) prohibiting Plaintiffs from buying GME and other

---

[14] https://cdn.robinhood.com/assets/robinhood/legal/Customer%20Agreement.pdf (Last accessed Jan. 28, 2021).

securities for Robinhood's own pecuniary interest and not disclosing those interests to Plaintiffs and all Class members.

93.     Robinhood's conduct has breached the implied covenant of good faith and fair dealing because it has caused Plaintiffs and Class members' harm, losses and damages, and continues to expose them to harm because Robinhood continues to fail to perform under the Customer Agreement. These losses reflect damages to Plaintiffs and Class members in an amount to be determined at trial.

94.     Additionally, because damages may not be a full and complete remedy due to the ongoing nature of the relationship between the parties and the continuing risk of future harm, Plaintiffs and Class members seek specific performance of the contract to ensure Robinhood permits complete access to the open market in the future.

**FOR A THIRD COLLECTIVE CAUSE OF ACTION**
**VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW, Cal. Bus. & Pro. Code §§ 17200,** *et seq.*
**(Against Robinhood)**

**(Plaintiffs and Other Members of the Class)**

95.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

96.     Plaintiffs bring this count on behalf of themselves and other members of the Class.

97.     Robinhood has engaged in unfair competition within the meaning of California Business & Professions Code section 17200, *et seq.*, because Robinhood's conduct is unlawful and unfair as herein alleged.

98.     Plaintiffs, the members of the Class, and Robinhood are a "person" or "persons," within the meaning of Section 17201 of the California Unfair Competition Law ("UCL").

99.     The UCL prohibits any unlawful and unfair business practices or acts.  Robinhood's conduct, as alleged herein, constitutes an unlawful and unfair business practice that occurred in connection with the provision of its financial and investment broker services.

100.   **Unlawful prong:**     Robinhood's conduct, as described within, violated the UCL's unlawful prong because it: (1) constitutes negligence and/or gross negligence; (2) constitutes a breach of fiduciary duty; (3) constitutes a breach of contract and/or a breach of the implied covenant of good faith and fair dealing; (4) it violated applicable regulatory laws and guidance such as FIRNA Rule 5310 which requires best execution of orders fully and promptly; and (5) has unlawfully and unjustly enriched Robinhood.

101.   **Unfair Prong:**     Robinhood's conduct, as described within, violated the UCL's unfair prong because its conduct violates established public policy intended to regulate financial services to consumers, and because it is immoral, unethical, oppressive, or unscrupulous and has caused injuries to the Plaintiffs and the Class that outweigh any purported benefit.

102.   Plaintiffs have standing to pursue this claim because they have been injured by virtue of suffering a loss of money and/or property as a result of the wrongful conduct alleged herein.

103.   The UCL is, by its express terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes and/or common law remedies, such as those alleged in the other Counts of this Complaint.

104.   As a direct and proximate cause of Robinhood's conduct, which constitutes unlawful and unfair business practices, as herein alleged, Plaintiffs and Class members have been damaged and suffered ascertainable losses, thereby entitling them to recover restitution and equitable relief, including disgorgement or ill-gotten gains, refunds of moneys, interest, reasonable attorneys' fees, filing fees, and the costs of prosecuting this class action, as well as any and all other relief that may be available at law or equity.  Additionally, because Plaintiffs and Class members continue to have accounts and investments with Robinhood and intend to use Robinhood's services in the future, injunctive relief is warranted.

**FOR A FOURTH COLLECTIVE CAUSE OF ACTION**
**VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW, Cal. Bus. & Pro. Code §§**
**17500, *et seq.***
**(Against Robinhood)**

**(Plaintiffs and Other Members of the Class)**

105.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

106.    Plaintiffs bring this count on behalf of themselves and other members of the Class.

107.    Cal. Bus. & Prof. Code § 17500 provides:

It is unlawful for any…corporation…with intent…to dispose of…personal property…to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated…from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement…which is untrue or misleading, and which is know, or which by the exercise of reasonable care should be know, to be untrue or misleading…"

(Emphasis added).

108.    Robinhood's advertisement and promises to execute placed orders in their advertisements as well as in their Customer Agreement contracts with their users was an unfair, untrue and misleading practice.  This deceptive marketing practice gave consumers the false impression that when the users placed orders to purchase securities, Robinhood would execute those purchases at market price.  Robinhood instead manually removed securities from its platform, unilaterally cancelled user orders, and even short sold shares of securities listed in this Complaint.

109.    Robinhood's advertisement and promises to "democratize finance for all" and "investing is for everyone" was an unfair, untrue and misleading practice.  The deceptive marketing campaign gave consumers the false impression that they would be able to trade on the open market like all hedge funds.

110.    Robinhood misled consumers by making untrue and misleading statements and failing to disclose what is required as stated in the Code alleged above.

111.    As a direct and proximate result of Barneys' leading and false advertisements, Plaintiffs and Class members have suffered injury in fact and have lost money.  As such, Plaintiffs request that this Court order Robinhood to restore this money to Plaintiffs and all Class members, and to enjoin Barneys from continuing these unfair practices in violation of the UCL in the future. Otherwise, Plaintiffs, Class members, and the broader general public, will be irreparably harmed and/or denied an effective and complete remedy.

### FOR A FIFTH COLLECTIVE CAUSE OF ACTION
### NEGLIGENCE
### (Against Robinhood)

### (Plaintiffs and Other Members of the Class)

112.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

113.    Plaintiffs bring this count on behalf of themselves and other members of the Class.

114.    As a provider of financial services and registered securities investment broker-dealer, Robinhood had a duty to exercise reasonable care, skill, and ability in conducting and facilitating financial services and transactions for its customers.

115.    Robinhood unlawfully breached its duties by, among other things, (i) removing GME and other securities without notice from its trading app; (ii) failing to provide financial services related to GME and other securities; and (iii) failing to notify customers in a timely manner of the lockout of GME and other securities.

116.    Robinhood's conduct as set forth in this complaint was so want of even scant care that its acts and omissions were and continue to be an extreme departure from the ordinary standard of conduct, rendering Robinhood negligent.

117.    Robinhood's negligence and breaches of its duties owed to Plaintiffs and the Class members proximately causes losses and damages that would not have occurred but for Robinhood's

breach of its duty of due care.  These losses reflect damages to Plaintiffs and Class members in an amount to be determined at trial.

**FOR A SIXTH COLLECTIVE CAUSE OF ACTION**
**BREACH OF FIDUCIARY DUTY**
**(Against Robinhood)**

**(Plaintiffs and Other Members of the Class)**

118.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

119.   Plaintiffs bring this count on behalf of themselves and other members of the Class.

120.   As a licensed provider of financial services, Robinhood at all times relevant herein was a fiduciary to Plaintiffs and Class members and owed them the highest good faith and integrity in performing its financial services on their behalf.  Robinhood also acted as a fiduciary to each and every customer who agreed to the Customer Agreement.

121.   Robinhood beached its fiduciary duties to Plaintiffs and Class members by, among other things, failing to disclose that its platform was going to remove GME and other security purchases in a timely manner; actually removing GME and other securities from its trading platform; removing GME and other securities for its own pecuniary benefits; that Robinhood failed to comply with all applicable legal, regulatory, and licensing requirements; and that Robinhood failed to exercise trades and actions requested by customers in a complete and timely manner (also required by FINRA Rule 5310).

122.   Robinhood's conduct has caused Plaintiffs' and Class members' harm, losses and damages and continues to expose them to harm because Robinhood continues to breach its fiduciary duties.  These losses reflect damages to Plaintiffs and Class members in an amount to be determined at trial.

**FOR A SEVENTH COLLECTIVE CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(Against Robinhood)**

**(Plaintiffs and Other Members of the Class)**

123.    Plaintiffs hereby incorporate by reference the factual allegations contained herein.

124.    Plaintiffs bring this cause of action on behalf of themselves and other members of the Class.

125.    By its wrongful conduct described herein, Robinhood has obtained a benefit from Plaintiffs and Class members that includes, but is not limited to, maintaining their accounts, receiving their personal data, receiving payments for order flow, maintaining deposited funds, charging and/or receiving interest on accounts and margin balances, charging and/or receiving fees, commissions, and increased capital fundraising due to the high number of new and continuing users of its platform, all of which also drives up Robinhood's valuation.

126.    Since Robinhood profits, benefits, and other compensation were obtained by improper means, Robinhood was unjustly enriched at the expense of Palintiffs and Class members and is not legally or equitably entitled to retain any of the benefits, compensation or profits it realized.

127.    Plaintiffs and Class members seek an order of this Court requiring Robinhood to refund, disgorge, and pay as restitution any profits, benefits, and other compensation obtained by Robinhood from its wrongful conduct and/or the establishment of a constructive trust from which Plaintiffs and Class members may seek restitution.

**FOR AN EIGHTH COLLECTIVE CAUSE OF ACTION**
**AIDING AND ABETTING BREACH OF FIDUCIARY DUTY**
**(Against Citadel)**

**(Plaintiffs and Other Members of the Class)**

128.    Plaintiffs hereby incorporate by reference the factual allegations contained herein.

- 23 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

129.     Plaintiffs bring this cause of action on behalf of themselves and other members of the Class.

130.     Citadel owed a duty to Plaintiffs and the Class by virtue of serving as the market maker for a significant portion of their trades on the Robinhood platforms.

131.     Citadel knew Robinhood had a fiduciary duty to Plaintiffs and the Class to allow for the free-flow and uninterrupted placement and execution of purchase orders of GME and the other securities identified in this Complaint.

132.     Citadel is Robinhood's primary market maker and is well aware of the requirements for providing liquidity and for Robinhood allowing unrestricted purchases of GME and the other securities identified in this Complaint.

133.     Citadel, having a financial incentive to do so, as well as financial leverage over Robinhood, given the significant revenue stream for Robinhood from Citadel, induced, encouraged, and pressured Robinhood to restrict purchase orders of GME and the other securities identified in this Complaint.

134.     Without Citadel's inducement, encouragement and undue pressure on Robinhood to restrict purchase orders on GME and the other securities identified in this Complaint, Robinhood would likely have continued to allow the free-flow of purchase orders of GME and the other securities identified in this Complaint, as it had allowed in the previous days and weeks despite the same or similar levels of volatility and market participation.

135.     Accordingly, Citadel aided and abetted Robinhood's breach of its fiduciary duties and to Plaintiffs and the Class.

**FOR A NINTH COLLECTIVE CAUSE OF ACTION**
**INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**
(Against Citadel)

**(Plaintiffs and Other Members of the Class)**

136.    Plaintiffs hereby incorporate by reference the factual allegations contained herein.

137.    Plaintiffs bring this cause of action on behalf of themselves and other members of the Class.

138.    Plaintiffs and members of the Class formed contractual relationships through the Customer Agreement in which Robinhood offered to provide access to their trading platform with complete access to the open market through their services as an online brokerage firm.

139.    Upon information and belief, Citadel had knowledge that Robinhood had these contractual relationships and prospective contractual relationship with Plaintiffs and members of the Class as Citadel is the primary market-maker for Robinhood, providing liquidity for over half of the trades entered on the Robinhood platform.

140.    Upon information and belief, Citadel prevented Robinhood from performing under the contracts between Plaintiffs and members of the Class and Robinhood.

141.    Upon information and belief, Citadel acted intentionally to interfere with the contracts and prospective contracts between Plaintiffs and members of the Class and Robinhood.

142.    As the result of Citadel's actions as alleged herein, Plaintiffs and members of the Class have been irreparably, materially, and substantially harmed and damages in an amount to be proven at trial.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of members of the Class, pray for judgment in their favor and against Defendants as follows:

a.    Certifying the Class as proposed herein, designating Plaintiffs as Class representatives, and

appointing undersigned counsel as Class Counsel;

b.    Declaring that Defendants are financially responsible for notifying the Class members of the pendency of this action;

c.    Declaring that Defendants has wrongfully interfered with the free market purchase of GME and other securities identified in this Complaint;

d.    For an order declaring that Robinhood's conduct violates the statues referenced herein;

e.    Requiring that Defendants disgorge amounts wrongfully obtained for payment for order flow and orders for trades of GME and other securities identified in this complaint;

f.    For compensatory, punitive, and statutory damages in amounts to be determined by the Court and/or jury;

g.    Awarding injunctive relief as permitted by law or equity, including enjoining Defendants from limiting or restricting GME and other securities mentioned in this complaint;

h.    For an order of restitution and all other forms of equitable monetary relief;

i.    Scheduling a trial by jury in this action;

j.    Awarding Plaintiffs' reasonable attorneys' fees, costs and expenses, as permitted by law;

k.    Awarding pre and post-judgment interest on any amounts awarded, as permitted by law; and

l.    Awarding such other and further relief as may be just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury in this action of all issues so triable.

1

Dated February 3, 2021

2

**ANASTOPOULO LAW FIRM, LLC**

3

/s/        *Eric M. Poulin*
Eric M. Poulin

4

CA State Bar No. 298476
Roy T. Willey, IV (*Pro Hac Vice Forthcoming*)

5

Blake G. Abbott (*Pro Hac Vice Forthcoming*)
32 Ann Street

6

Charleston, SC 29403

7

Tel: (843) 614-888
Email: eric@akimlawfirm.com

8

          roy@akimlawfirm.com
          blake@akimlawfirm.com

9

10

**ATTORNEYS FOR PLAINTIFFS AND
THE PROPOSED CLASS**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28